UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LISA SKINNER, | ) |
| PLAINTIFF, | ) ) ) Civil Action No. 16-cv-07089 |
| v. | ) ) Hon. Marvin E. Aspen |
| LVNV FUNDING, LLC, | ) ) Magistrate Judge Maria Valdez |
| DEFENDANT. | ) |

**PLAINTIFF'S COMBINED RESPONSE AND REPLY TO DEFENDANT'S RESPONSE AND CROSS-MOTION FOR SUMMARY JUDGMENT**

I. **INTRODUCTION**

It is undisputed that defendant LVNV Funding, LLC ("Defendant") added interest to plaintiff Lisa Skinner's ("Plaintiff") account, attempted to collect the added interest, and reported the added interest to credit reporting agencies. (Defendant's Response to Plaintiff's 56.1 Statement of Facts ("Def. 56.1 Resp."), Docket #43, ¶¶11). In fact, Defendant was not authorized, by law or previous agreement, to add any additional amount to Plaintiff's account. By attempting to collect those amounts and falsely representing that they had a right to do so, they violated §§ 1692e and 1692f of the Fair Debt Collection Practices Act, 15 U.S.C. 1692 ("FDCPA"), as well as the Illinois Collection Agency Act, 225 ILCS 425/9 ("ICAA").

As the Seventh Circuit often (and colorfully) instructs, Summary Judgment is the "put up or shut up" moment in a lawsuit. *Johnson v. Cambridge Indus., Inc.,* 325 F.3d 892, 901 (7th Cir. 2003). That is, "a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Id.* In response to a Motion for Summary judgment, the party opposing the motion must, *at a bare minimum*, show that there is a dispute of facts, by providing credible evidence. *Siegel v. Shell Oil Co.,* 612 F.3d 932, 937 (7th Cir. 2010). Moreover, the evidence must

1

be such that a reasonable jury could find in favor of the non-moving party. *Id*. Defendant has not produced any evidence to convince a jury to rule in their favor or create any genuine issues of fact.

Defendant attempts to escape liability by advancing three arguments, all of which fail. First, Defendant claims that Plaintiff has not met the pre-requisites for a successful FDCPA action – namely, that the debt is not a 'consumer debt', and that Defendant is not a debt-collector. (Defendant's Response and Cross-Motion for Summary Judgment, Docket #41 ("DMSJ"), p. 5). Both claims are incorrect. Plaintiff has offered uncontroverted evidence that the alleged debt she incurred was solely for personal, family, or household use. *See,* Plaintiff's 56.1 Statement of Undisputed Material Fact ("Pl. 56.1"), ¶6). Defendants failure to offer any evidence to the contrary does not establish a 'question of fact'. Next, Defendant misrepresents the recent Supreme Court decision in *Henson v. Santander USA, Inc.*, 137 S. Ct. 1718 (June 12, 2017). *Santander*'s narrow ruling does *not*, as Defendant argues, foreclose finding them to be debt collectors under the FDCPA.

Second, Defendant argues that they "acquired all the rights" to Plaintiff's account, which included the "right to charge interest". (DMSJ, p. 4) The FDCPA and the ICAA are crystal clear: a debt-collector cannot collect "any amount (including interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. . . ." 15 U.S.C §1692f(1); *see, also,* 225 ILCS 425/9(a)(33). Defendant has produced zero evidence that they had either a legal or contractual right to the interest they charged and collected – or even that they owned Plaintiff's account at all.

Lastly, Defendant asks this court to adopt its own peculiar interpretation of Illinois law. Specifically, they claim that there is no private right of action under Section 9 of the Illinois

Collection Act. (DMSJ, p. 8). The majority of decisions in this district have instead found that the ICAA does implicitly allow private rights of action for violations of Section 9.

II. **ARGUMENT & AUTHORITY**

   1. **Plaintiff has Satisfied the Pre-requisites for a FDCPA Claim**

      a. **Plaintiff's Alleged Debt is a Consumer Debt**

Defendant attempts to manufacture a 'question of fact' as to whether the underlying debt was a consumer debt as required by the FDCPA. As Plaintiff's Complaint alleges, and her sworn declaration confirms, all the purchases made on the credit card were for personal and household items. (PSOF, ¶6) Thus, she present facts based on her personal knowledge, admissible at trial, that Defendant cannot credibly dispute. Additionally, Defendant's 30(b)(6) testimony establishes that the account is not a business account, and thus on its face is a consumer debt. *See,* Docket #31-7, Deposition of Tonya Henderson, p. 9:15-17("I don't believe it's a business account."). Defendant has chosen not to depose Plaintiff to discover whether there is actually a legitimate question as to the nature of the underlying debt. Furthermore, Defendant fully admits that "LVNV possesses Plaintiff's HSBC credit card account statements," and yet has not found any indication that the credit card was used for anything other than personal and household items. (DMSJ, p. 4) That is, Defendant does not produce any evidence that controverts or even questions the fact that the debt was a consumer debt. In short, Defendant utterly fails to meet their burden in responding to the facts Plaintiff has set forth.

      b. **Defendant is a Debt-Collector**

Defendant argues that following the Supreme Court ruling in *Henson v. Santander Consumer USA, Inc.,* 137 S. Ct. 1718 (June 12, 2017)("*Santander*"), LVNV is no longer

considered a debt collector under the FDCPA. Their argument is based on a misunderstanding of the ruling in *Santander*. A debt collector, under the FDCPA, is any person: (1) "who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts"; **or,** (2) "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. 1692a(6). That is, a person or business is a debt collector under either the "principal purpose" prong or the "regularly collects" prong – or both. Contrary to what Defendant represents to this court, the Supreme Court *did not* rule "that the definition of debt collector under the FDCPA does not encompass entities that regularly purchase debts originated by someone and then seek to collect those debts for their own account." (DMSJ, p. 3) What *Santander* actually decided was only that a 'debt buyer' that regularly collects debts it has purchased would not necessarily be considered a 'debt collector' under the second definition – a ruling that does not affect debt buyers whose principal purpose is also debt collection. *Santander,* 137 S. Ct. 1718 at 1722. *Santander* in fact rejects the notion that a debt buyer and a debt collector are mutually exclusive under the FDCPA.

> In its opinion, the Court explicitly limited it's ruling to the second definition:
>
>> "the parties briefly allude to another statutory definition of the term 'debt collector'—one that encompasses those engaged 'in any business the principal purpose of which is the collection of any debts.' But the parties haven't much litigated that alternative definition and in granting certiorari we didn't agree to address it either."

*Id.* at 1721 (internal citation omitted).

Defendant's only argument is that "LVNV does not fall into the definition of an entity that regularly collects or attempts to collect…debts owed or due…another." DMSJ, p. 3. However, they are indisputably debt collectors under the "principal purpose" prong. LVNV's *sole* purpose is the purchase and collection of defaulted consumer debt, so regardless of whether they own the

4

debt, they are debt-collectors under the first definition in § 1692a(6). The facts of *Santander* illustrate the difference: Santander Consumer USA, Inc. was part of a large multi-national finance group, and *part* of that business did indeed consist of purchasing 'bundles' of defaulted consumer debt. The Court's central finding, however, was that the definition of "debt owed another" was not limited to the original creditor: Once Santander purchased the debt, it was owed to them. Of course, this does not speak to a business whose principal purpose is the collection of "any debt."

LVNV's raison d'être is the purchase and collection of defaulted debt. In the Circuit Court of Cook County alone Defendant filed more than 500 collection lawsuits in just the month of July.[1] Lawsuits to collect on debt are indisputably collection activity. At the risk of redundancy, litigation to collect a debt is, per se, debt collection. The Supreme Court confirmed this in *Heintz v. Jenkins*, 514 U.S. 291 (1995): "In ordinary English, a lawyer who regularly tries to obtain payment of consumer debts through legal proceedings is a lawyer who regularly "attempts" to "collect" those consumer debts." *Id*. at 294. More to the point, courts use litigation activity as a metric in deciding whether a business is a debt collector under the 'principal purpose' prong. In *Scott v. Jones*, 964 F.2d 314 (4th Cir. 1992), evidence in the record showed that 70-80% of the defendant law firm's legal fees were generated by legal work related to collecting debts. *Id.* at 316. The Fourth Circuit affirmed the district court's finding that this showed the firm's "principal purpose" was debt collection. *Id.* Similarly, in *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413 (S.D.N.Y. 2010), the court held that a defendant debt-buyer was a debt collector as a matter of law. *Id.* at 423. They based this conclusion on the fact that the debt-buyer was "principally" in the business of buying debts and the fact that they had filed thousands of lawsuits to collect on those debts. *Id.* In

---

[1] Please see accompanying Request for Judicial Notice, and Exhibit A, State-court filings, attached thereto.

*Polanco v. NCO Portfolio Mgmt., Inc.*, 132 F. Supp. 3d 567 (S.D.N.Y. 2015), the court also found the defendant debt-buyer to be a debt collector under the FDCPA as a matter of law on summary judgment. *Id.* at 580. The court found that because the defendant was the in the business of purchasing "millions" of defaulted consumer debts and then filing thousands of lawsuits in state court in its own name, it acted "principally as a 'debt collector'". *Id.* Moreover, the court noted that while the defendant had disputed the "scope and nature" of their debt collection activities, they failed to put forth any evidence to create a genuine issue of fact. *Id.*

Critically, Defendant does not even claim that their business does anything other than purchase and collect debt. Instead, based on their misunderstanding of *Santander*, their *only* argument is that because they own the debt they collect, they cannot be debt collectors under the FDCPA. This is simply incorrect.

2. **Defendant had no Statutory or Contractual Right to Charge Interest**

Plaintiff's FDCPA claims rest ultimately on the fact the Defendant charged interest to her account without authorization by law or through the original agreement that created the alleged debt. Defendant attempts to argue that they had the right to charge interest, but they fail to provide any evidence whatsoever to support this claim. First, it is undisputed that Defendant does not have a copy of the original 'cardmember agreement' – so their claim that it included the right to charge interest is pure speculation. (Def. 56.1 Resp., ¶14). Second, Defendant argues that the 'Purchase and Sale Agreement' (Docket #42-3, p. 5 [under seal]) between the original creditor, HSBC, and Sherman Originator III, LLC ("Sherman") included the transfer of the right to charge interest. (DMSJ, p. 5). However, there is nothing whatsoever in the record to show that the Plaintiff's account was transferred by the 'Purchase and Sale Agreement' between HSBC and Sherman Originator III, LLC. More importantly, the 'Purchase and Sale Agreement' is inadmissible

hearsay. Finally, HSBC had affirmatively waived their right to charge interest, and thus could not have transferred that right to a third-party (even if there were evidence that Plaintiff's account was, in fact, transferred to LVNV).

    a. **Defendant's 'Right to Add Interest' is Purely Speculative, and is Not Supported by any Evidence**

It is an undisputed fact that Defendant does not have the original agreement that created the alleged debt. *See,* Def. 56.1 Resp., ¶14. Accordingly, there is no evidence of what rights, if any, were expressly authorized in such an agreement. Thus, they cannot legitimately claim that it included the right to add interest. Instead, they simply produce almost 100 pages of account statements to support their rather banal point that the original creditor had charged interest in the past: "it is without doubt that Plaintiff's credit card account was subject to interest charges." (DMSJ, p. 4) The actions of the previous creditor are wholly irrelevant to the inquiry at hand: what the original agreement "expressly authorized." In essence, Defendant is asserting a right that they have created out of thin air. This is made even more obvious by the fact that Defendant is unable to show what interest rate they were applying or how the interest was calculated. Additionally, Defendant's own 'Account Event History' lists the interest rate on Plaintiff's alleged account as 0%. *See,* Dkt. 42-2, 'Account Event History, LVNV0008' [under seal].

Credit card agreements frequently provide that interest will no longer be added once the account is charged off, sent to collection, or sold. Even conceding that HSBC did charge interest to Plaintiff's account at some point in the past, it does not speak to whether Plaintiff's account would have been subject to interest charges once it was charged off or sold to a third-party – or whether the agreement "expressly authorized" interest and the rate and calculation of such interest. This is a dispositive lack of evidence. Without an authentic copy of the actual cardholder

agreement, Defendant cannot survive summary judgment. In *Reynolds v. EOS CCA, U.S. Asset Mgmt., Inc.*, No. 114CV01868JMSDML, 2016 WL 1639120 (S.D. Ind. Apr. 26, 2016) the court granted summary judgment to plaintiff on her § 1692e claims arising out of an attempt to collect interest and a 'collection fee'. *Id.* at *6. The debt collector argued that plaintiff's original contract with her cell phone provider allowed for interest and collection fees. However, the defendant had only produced a generic "Terms of Service" – and the court found that was insufficient as evidence, and so did not actually create an issue of material fact. *Id* at *5.

Similarly, in *McCollough v. Johnson, Rodenburg & Lauinger, LLC.,* 637 F.3d 939, 950 (9th Cir. 2011), the Ninth Circuit affirmed the district court's grant of summary judgment for the plaintiff where the defendant was unable to produce the original agreement that it argued authorized it to charge attorney's fees. *Id.* at 950. The defendant had attempted to use a generic cardmember agreement to show that such fees were permitted under all agreements. *Id.* Additionally, they argued that at the very least, without the agreement, there remained a question of fact for the jury. *Id.* The Appellate Court affirmed the district court's ruling "that [defendant] had failed to meet its burden to show a genuine issue for trial because it presented no admissible evidence of a contract authorizing a fee award." *Id. See, also, Robinson v. Sherman Fin. Grp., LLC*, 984 F. Supp. 2d 816, 825 (E.D. Tenn. 2013) (Denying summary judgment on § 1692e claims to defendant who produced only generic 'Cardmember agreement'); *Burch v. Midland Funding, LLC*, No. 14-219, 2014 WL 4898265, at *2 (N.D. Ill. Sept. 29, 2014) (Denying Motion to Dismiss because defendant debt collector did not have the original contract they claimed allowed them to charge interest: "the terms of any contract are a mystery at this point.").

b. **Defendant has not shown that they own Plaintiff's Account, or any rights to collect Interest were Transferred to Them.**

Defendant has not even met the threshold showing that they had any right to attempt to collect on Plaintiff's account. Defendant has produced only a boilerplate purchase and sale agreement between two non-parties – and has not provided any means of authenticating this document. The 'Purchase and Sale Agreement' is between HSBC and Sherman. This is a classic example of hearsay, and is inadmissible under the Federal Rules of Evidence 801-802. Fed. R. Ev. Art. VIII. Additionally, Defendant has not met the requirements of the 'business records' exception because they have not produced a certification of the document by a "custodian or another qualified person". *See,* Fed. R. Ev. 803(6); 902(11). Instead they only offer the affidavit of Tonya Henderson, who works for Resurgent Capital Services and Defendant LVNV Funding, LLC – not HSBC or Sherman. *See,* Docket #42-3, Affidavit of Tonya Henderson and Attached Documents, pp. 2-4. Her affidavit, "based on personal knowledge" cannot be used to verify third-party business records because she is not a custodian of either HSBC or Sherman nor is she otherwise qualified to attest to their accuracy.

Defendant's argument is that "the purchase agreement between HSBC and Sherman shows that the rights [sic] to charge interest and late fees existed at the time of purchase and those rights were purchased by Sherman." (DMSJ, p. 5) This is a misrepresentation to the court. Even assuming, *arguendo,* that the purchase agreement they provided was both credible and admissible, this statement is not supported by the text of the purported 'Purchase and Sale Agreement' (Defendant has conspicuously failed to point to what clause or text in the 'agreement' they are even referencing). *See,* Plaintiff's Response to Defendant's 56.1 Statement of Facts, ¶¶6-7. In fact, there is nothing in that document that "shows that the rights to charge interest and late fees existed

at the time of purchase". *Id. See, also*, Docket #42-3, 'Exhibit 1 'Purchase Agreement' [under seal]', p. 5. Furthermore, the 'Purchase and Sale Agreement' does not contain any evidence that Plaintiff's specific account was governed by the terms of that agreement – there are no account numbers or other identifying information regarding what accounts were transferred under the purported agreement. *Id.* In short, Defendant has not produced any evidence to show that they even own Plaintiff's account, much less have the right to charge interest.

    c. **HSBC had Affirmatively Waived its Right to Charge Interest on Plaintiff's Account Prior to the Alleged Transfer**

Lastly, even if this court finds Defendant has produced admissible evidence that any rights had been transferred to LVNV via Sherman, and that those rights included the right to charge interest, the original creditor, HSBC, had waived its right to interest, and when a debt-collector attempts to "collect interest that a previous creditor had waived, the debt collector violates § 1692e(2)(A)." *Simkus v. Cavalry Portfolio Servs., LLC*, 12 F. Supp. 3d 1103, 1109 (N.D. Ill. 2014). HSBC, the original creditor, charged off the account in December 2011, and ceased charging interest and sending periodic statements. (Def. 56.1 Resp., ¶8). Because this is conscious business decision, with positive tax consequences for the creditor, numerous courts have found it to be an affirmative waiver of their right to charge interest. *See, e.g., McDonald v. Asset Acceptance LLC,* 296 F.R.D. 513, 525 (E.D. Mich. 2013) (charge off allows bank to remove account from their financial records and receive a 'bad debt tax deduction', thus implying decision to waive interest); *Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 445 (6th Cir. 2014), as amended (Dec. 11, 2014) ("GE's decision was neither irrational nor altruistic: By charging off the debt and ceasing to charge interest on it, GE could take a bad-debt tax deduction").

3. **The ICAA Provides a Private Right of Action**

Defendant's final argument is that there is not private right of action under § 9 of the ICAA. DMSJ, pp. 6-9. However, the Illinois Supreme Court has yet to rule on this specific question, and the single Illinois Appellate Decision to address it has come to the opposite conclusion. In *Sherman v. Field Clinic*, 74 Ill. App. 3d 21 (Ill. App. Ct. 1979), the court held that "a private right of action for damages may be founded on a violation of section 9 of the Collection Agency Act…" *Id.* 30. We urge this court to follow other decisions in this district that have given the *Sherman* ruling due deference. *See*, *e.g.*, *Galvan v. NCO Fin. Sys., Inc.*, No. 11 C 3918, 2016 WL 792009, at *4 (N.D. Ill. Mar. 1, 2016) (finding *Sherman* controlling and holding a ICAA § 9 claim could proceed); *McLaughlin v. LVNV Funding, LLC*, 971 F. Supp. 2d 796, 800 (N.D. Ill. 2013) (same); *Grant-Hall v. Cavalry Portfolio Servs., LLC*, 856 F. Supp. 2d 929, 940 (N.D. Ill. 2012) (applying *Sherman* to §8 claim under the ICAA); *Kim v. Riscuity, Inc.*, No. 06 C 1585, 2006 WL 2192121, at *3 (N.D. Ill. July 31, 2006) (reviewing Illinois case law supporting an implied right of action under the ICAA); *Jablonski v. Riverwalk Holdings, Ltd.*, No. 11 CV 840, 2012 WL 2254257, at *6 (N.D. Ill. June 14, 2012) (noting that *Sherman* recognizes a private right of action under § 9).

4. **CONCLUSION**

Defendant added interest to Plaintiff's account and attempted to collect the additional amount. However, Defendant had no right to charge or collect interest on Plaintiff's account. This is a violation of §§ 1692e and 1692f of the FDCPA and § 9 of the ICAA. Defendant has not offered any evidence whatsoever that they did, in fact, have the authority to add interest.

WHEREFORE, Plaintiff Lisa Skinner respectfully requests this court grant Summary Judgment in her favor on all claims and against Defendant LVNV Funding, LLC.

          Respectfully submitted,

          By:    /s/ *Celetha Chatman*

          One of Plaintiff's Attorneys

Celetha Chatman
Michael Wood
***Community Lawyers Group, Ltd.***
73 W. Monroe Street, Suite 514
Chicago, IL 60603
Ph: (312)757-1880
Fx: (312)265-3227
cchatman@communitylawyersgroup.com
mwood@communitylawyersgroup.com

## **CERTIFICATE OF SERVICE**

I, Celetha Chatman, an attorney, hereby certify that on August 28, 2017, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to all attorneys of record.

**Dated: August 28, 2017**                                 Respectfully submitted,


                                                    By: _____ /s/ *Celetha Chatman*


Celetha Chatman
Michael Wood
***Community Lawyers Group, Ltd.***
73 W. Monroe Street, Suite 514
Chicago, IL 60603
Ph: (312)757-1880
Fx: (312)265-3227
cchatman@communitylawyersgroup.com
mwood@communitylawyersgroup.com