## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

LISA SKINNER,            )
                                   )
              Plaintiff,      )
                                   )     No. 16 C 7089
           v.                    )     Hon. Marvin E. Aspen
                                   )
LVNV FUNDING, LLC,     )
                                   )
              Defendant.    )

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Presently before us are the parties' cross-motions for summary judgment. Plaintiff Lisa Skinner moved for summary judgment on her claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and Illinois Collection Agency Act ("ICAA"), 225 ILCS 452/1 *et seq.* (Pl.'s Mot. (Dkt. No. 30) at 1.) Plaintiff also submitted a motion for judicial notice of a document. (Pl.'s Mot. for Notice (Dkt. No. 48) at 2, Ex. A.) Defendant LVNV Funding, LLC ("LVNV") responded to Plaintiff's motions by filing a cross-motion for summary judgment on the same claims. (Def.'s Mot. (Dkt. No. 40) at 1.) The parties have fully briefed the cross-motions. For the following reasons, we grant Plaintiff's motion for judicial notice, deny Plaintiff's motion for summary judgment, and grant Defendant's motion for summary judgment.

## BACKGROUND

On December 31, 2011, HSBC charged off a debt of approximately $243.00 Plaintiff incurred through a credit card account with the bank. (Pl.'s Statement of Uncontested Facts ("SOF") (Dkt. No. 31) ¶ 8; Def.'s SOF (Dkt. No. 42) ¶ 4, Ex. 4.) Sherman Originator, LLC

("Sherman") purchased the debt from HSBC in January 2012 and then transferred the debt to LVNV.[1] (Pl.'s SOF ¶¶ 2, 8; Def.'s SOF ¶¶ 2, 5.)[2] LVNV furnished Plaintiff's account information to credit reporting agency TransUnion through LVNV's servicing agent, Resurgent, in August 2015. (Pl.'s SOF ¶¶ 11–12; Def.'s SOF ¶¶ 8–9.) Through Resurgent, LVNV reported to TransUnion that Plaintiff originally owed $381.00 and had a current balance of $437.00. (Pl.'s SOF ¶ 11; Def.'s SOF ¶ 9.) The reported increase in the amount of debt from $243.00 is allegedly due to interest accrued after HSBC charged off the debt. (Pl.'s Mot. at 8.)

Plaintiff filed a complaint in Federal Court on July 8, 2016 claiming Defendant's reporting of her balance violated the FDCPA and the ICAA. (Compl. (Dkt. No. 1).) Specifically, Plaintiff alleges Defendant illegally misrepresented that Plaintiff owed $437.00, $194.00 more than Plaintiff's charged off debt, because Defendant did not have the right to collect interest on the debt. (*Id.* ¶¶ 13–31.) In response, Defendant filed an answer denying the claims and asserting affirmative defenses. (Dkt. No. 11.)

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56, a party is entitled to summary judgment only if it demonstrates there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). We may not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

---

[1] Plaintiff disputes the admissibility of the documents Defendant submitted detailing the transactions between HSBC and Sherman and between Sherman and LVNV. (Pl.'s Resp. to Def.'s SOF (Dkt. No. 46) ¶¶ 5–7.) We do not consider Plaintiff's objections as to the sufficiency of Defendant's evidence at this time because both parties agree that LVNV purchased Plaintiff's debt. (Pl.'s SOF ¶¶ 8; Def.'s SOF ¶ 5.)

[2] The parties do not agree on the exact date TransUnion received the report of Plaintiff's alleged debt. (Pl.'s SOF ¶ 11 (indicating the report occurred on August 3, 2015); Def.'s SOF ¶ 8 (indicating the report occurred on August 5, 2015).)

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S. Ct. 2548, 2553 (1986). "On cross-motions for summary judgment, the Court assesses whether each movant has satisfied the requirements of Rule 56." *Portalatin v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 125 F. Supp. 3d 810, 813 (N.D. Ill. 2015). As with any summary judgment motion, we consider cross-motions for summary judgment "construing all facts, and drawing all reasonable inferences from those facts, in favor of the non-moving party." *Laskin v. Siegel*, 728 F.3d 731, 734 (7th Cir. 2013) (citing *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir.2008)).

## ANALYSIS

### I.    Judicial Notice of LVNV's Filings in Illinois State Court

As a preliminary matter, we first address Plaintiff's motion for judicial notice of a document listing results of a docket search from the Clerk of the Circuit Court of Cook County. (Pl.'s Mot. for Notice at 2, Ex. A.) The search lists hundreds of cases filed by a "LVNV Funding" as plaintiff in the Cook County Circuit Court in July 2017. (*Id.*) Plaintiff requests we take notice of this document in support of her motion for summary judgment. (*Id.* at 1.)

Federal Rule of Evidence 201 allows a court to take judicial notice of any fact that is "not subject to reasonable dispute" because it is generally known in the court's jurisdiction or "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b). Judicial notice of Plaintiff's document is proper because the entries' existence is not in dispute and their accuracy can be easily confirmed by examining the court's electronic docket. *Stern v. Great W. Bank*, 959 F. Supp. 478, 481 (N.D. Ill. 1997) (taking

judicial notice of the court record of a related proceeding); *Cagan v. Intervest Midwest Real Estate Corp.*, 774 F. Supp. 1089, 1093 (N.D. Ill. 1991) (finding judicial notice of a court order in another case proper); *Montanez v. Velasco*, No. 1:12 C 00250 AWI, 2013 WL 4041847, at *3 n.1 (E.D. Cal. Aug. 7, 2013) (taking judicial notice of the results of a county court's electronic docket search); *Rice v. Jones*, No. CV 112 051, 2012 WL 3242038, at *1 n.3 (S.D. Ga. July 12, 2012), *report and recommendation adopted*, No. CV 112 051, 2012 WL 3242025 (S.D. Ga. Aug. 7, 2012) (same). Further, Defendant has not expressed any challenge to the authenticity of these entries and does not otherwise oppose the motion. We accordingly grant Plaintiff's motion for judicial notice. (Dkt. No. 48.)

## II. FDCPA Claim

We turn next to Plaintiff's claim under the FDCPA. The FDCPA aims to deter wayward debt collection practices that disrupt debtors' lives. *Henson v. Santander Consumer USA, Inc.*, 582 U.S. ___, 137 S. Ct. 1718, 1720 (2017); *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000). The statute prevents debt collectors from utilizing "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. However, the FDCPA only applies to "debt collectors" as defined by the statute in § 1692a(6). *Ruth v. Triumph P'ships*, 577 F.3d 790, 796 (7th Cir. 2009). Section 1692a(6) provides two alternative definitions of a "debt collector": (1) "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts" (the "principal purpose" definition), or (2) any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another" (the "regularly collects" definition). 15 U.S.C. § 1692a(6); *Schlaf v. Safeguard Props., LLC*, No. 15 C 50113, 2017 WL 4856227, at *3 (N.D. Ill. Aug. 29, 2017). Plaintiff has the burden of establishing Defendant meets a statutory

definition of a debt collector to succeed on her FDCPA claim. *Heller v. Graf*, 488 F. Supp. 2d 686, 692 (N.D. Ill. 2007).

The parties dispute whether Defendant meets the definition of "debt collector" under the FDCPA. It is undisputed Defendant owned Plaintiff's debt after it purchased it from Sherman. (Compl. ¶ 17; Def.'s Resp. at 2**.**) Defendant argues the Supreme Court's recent decision in *Henson* forecloses LVNV from qualifying as a debt collector. (Def.'s Mot. at 7; Def.'s Rep. (Dkt. No. 51) at 1.) In *Henson*, the Court unanimously held that a debt purchaser who seeks to "collect debts for its own account" is not a debt collector under the FDPCA based on the plain language of § 1692a(6). 137 S. Ct. at 1722. Plaintiff argues that *Henson* only interpreted the regularly collects definition, and Defendant still qualifies as a debt collector under the principal purpose definition. (Pl.'s Resp. (Dkt. No. 47) at 3–6.)

### A. Regular Collection of Debts Owed or Due Another Definition

*Henson* undoubtedly disqualifies Defendant as a debt collector under the regularly collects definition. The Court extensively evaluated the section of the "regularly collects" definition requiring the debt be "owed . . . another," concluding this language excluded all "individuals and entities who regularly purchase debts originated by someone else and then seek to collect those debts for their own account." *Id.* at 1721. Because Defendant sought to collect a debt it had purchased, Defendant falls outside of the regularly collects definition. *See Simpson v. Safeguard Props., LLC*, No. 13 CV 02453, 2017 WL 4310674, at *4 (N.D. Ill. Sept. 28, 2017) (quoting *Henson* for the proposition that the regularly collects definition excludes a party who owns the debt themselves).

### B. Principal Purpose Definition

We agree with Plaintiff that Defendant could still be a debt collector under the principal purpose definition because *Henson* controls only the regularly collects definition of debt collector provided in § 1692a(6). The Supreme Court clarified that its opinion did not address the principal purpose definition of a debt collector. *Henson*, 137 S. Ct. at 1721; *see also Chenault v. Credit Corp Solutions, Inc*., No. CV 16 5864, 2017 WL 5971727, at *2 (E.D. Pa. Dec. 1, 2017) ("*Henson* declined to address whether [defendant] constituted a debt collector under the first prong of the statute."); *Tepper v. Amos Fin., LLC*, No. 15 CV 5834, 2017 WL 3446886, at *8 (E.D. Pa. Aug. 11, 2017) ("Plaintiff appropriately directs our attention then to the first possible path provided by § 1692a, which the Supreme Court explicitly noted was outside the scope of its review.") (appeal pending). Review of the statutory language further indicates that *Henson*'s disqualification of debt purchasers only corresponds to the regularly collects definition of debt collector in § 1692a(6): the limitation that a debt must be "owed or due another," central to the Court's reasoning in *Henson*, follows the "or" in the definition and thus applies only to the second regularly collects definition. *Loughrin v. United States*, 573 U.S. ___, 134 S. Ct. 2384, 2390 (2014) (discussing the effect of the word "or" as a "disjunctive" in statutes, meaning the "words it connects are to be given separate meanings" and treated as "entirely distinct statutory phrases that the word 'or' joins") (internal citation omitted).

Other courts have similarly found *Henson* inapposite where debt purchasers meet the primary purpose definition. *See, e.g.*, *Kurtzman v. Nationstar Mortg. LLC*, No. 16 17236, 2017 WL 4511361, at *3 (11th Cir. Oct. 10, 2017) (finding that a debt purchaser could still qualify as a debt collector after *Henson* under the principal purpose definition); *Schweer v. HOVG, LLC*, No. 3:16 CV 01528, 2017 WL 2906504, at *5 (M.D. Pa. July 7, 2017)

(finding debt purchaser qualified as debt collector after *Henson* because the parties agreed that defendant's principal purpose was debt collection). Accordingly, we agree with Plaintiff that a debt purchaser can still qualify as a debt collector under § 1692a(6) if its principal purpose is the collection of debts.

We must then decide if Defendant qualifies as a debt collector under the primary purpose definition. In analyzing a business' principal purpose, we consider whether the entity's "*one principal purpose*" is that of "enforcing security interests." *Hunte v. Safeguard Props. Mgmt., LLC*, 255 F. Supp. 3d 722, 726 (N.D. Ill. 2017) (interpreting "Congress's use of the definite article" "the" to mean an entity can only have one principal purpose). "A party will not be considered a debt collector under the principle purpose definition if collection of debts is merely some of that party's business." *Schlaf*, 2017 WL 4856227, at *3. Similarly, a company cannot avoid debt collector status under the FDCPA by conducting some business that is not debt collection. *Simpson*, 2017 WL 4310674, at *5. Instead, we consider what proportion or percentage of a company's operations involves debt collection activities. *See, e.g.*, *Heller*, 488 F. Supp. at 692 (discussing cases analyzing percentages of law firms' business involving actions collecting debt); *see also* citing *Fox v. Citicorp Credit Servs., Inc*., 15 F.3d 1507 (9th Cir. 1994) (finding business with less than one percent of company's work in debt collection did to not meet the standard); *Scott v. Jones*, 964 F.2d 314 (4th Cir.1992) (finding 70 percent collection work established a principal purpose); *Winterstein v. CrossCheck, Inc*., 149 F. Supp. 2d 466, 472 (N.D. Ill. 2001) (considering six to seven percent of defendant's business being focused on collection efforts as insufficient to constitute a principal purpose).

The record lacks any evidence establishing the primary purpose of Defendant's business, debt collection or otherwise. Plaintiff presents a list of hundreds of collection lawsuits

Defendant filed in Cook County in July 2017 and offers proof that Defendant holds a collection agency license from the State of Illinois. (Compl. Ex. B, Pl.'s Resp. at 5, Pl.'s Mot. for Notice Ex. A.) While this evidence may establish Defendant's business involves some debt collection, it provides no basis for establishing the percentage of Defendant's operations that involve debt collection as compared to Defendant's operations as a whole. *Heller*, 488 F. Supp. 2d at 692–93 (establishing the percentage of a business' operations in collection efforts based on affidavits discussing the areas of work of the company, percentage of employee time spent on collection compared to other efforts, the distribution of employees in the company in different departments, the percentage of profits from each activity, and company financial records). Without any evidence of Defendant's operations as a whole, Plaintiff has failed to establish specific facts needed to establish the portion of Defendant's operations involve debt collection, a prerequisite to proving an entity's principal purpose is debt collection under the FDCPA. *Summers v. Midland Funding, LLC*, No. 14 CV 10174, 2017 WL 5152358, at *2 (N.D. Ill. Nov. 7, 2017) (denying plaintiff's motion to dismiss because plaintiff did not submit any "specific evidence" showing defendant met the definition of debt collector); *Schlaf*, 2017 WL 4856227, at *3 (granting summary judgment because plaintiff has not established as a matter of law defendant's principal purpose). Mere conclusory statements claiming LVNV's "*sole* purpose" and "raison d'être is the purchase and collection of defaulted debt" does not meet the required factual showing required at the summary judgment stage. *Id.* (finding plaintiff's statement that defendant "obvious[ly]" is a debt collector insufficient to win a summary judgment motion).

We thus agree with Defendant that Plaintiff's allegations about Defendant's status as a debt collector are "not supported by facts," and find Plaintiff has failed to meet her burden on an

essential element of her FDCPA claim. (Def.'s Resp. at 2 n.1.) Accordingly, we deny Plaintiff's

motion for summary judgment and grant Defendant's motion for summary judgment as to

Count I. *Celotex Corp.*, 477 U.S. at 322, 106 S. Ct. at 2552 ("[T]he plain language of Rule 56(c)

mandates the entry of summary judgment, after adequate time for discovery and upon motion,

against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial."). We

decline to address the parties' other FDCPA arguments because Plaintiff's failure to meet her

burden on the debt collector element is fatal to her FDCPA claim.

## III.    ICAA Claim

Plaintiff also alleges Defendant violated the ICAA by trying to collect debt not

authorized by law. (Compl. ¶¶ 38–39.) The ICAA regulates debt collection and aims to "protect

consumers against debt collection abuse." 225 ILCS 425/1a. Plaintiff alleges Defendant

violated § 9(a),[3] which provides the Department of Financial and Professional Regulation

("DFPR") the ability to take disciplinary action for prohibited debt collection behavior.

(Pl.'s Mot. at 2.) Defendant argues we must grant summary judgment as to Plaintiff's claim

because she has no private right of action under the ICAA. (Def.'s Mot. at 6–9.) Plaintiff admits

that the Illinois Supreme Court has not ruled on the specific question, but argues an implied

private right of action exists under § 9 of the ICAA. (Pl.'s Resp. at 11.)

We follow Illinois law in interpreting the ICAA. *Houben v. Telular Corp.*,

309 F.3d 1028, 1032 (7th Cir. 2002) (applying state substantive law when federal courts consider

state law claims under supplemental jurisdiction). Because there is no determinative Illinois

---

[3] Specifically, Plaintiff claims Defendant violated § 9(a)(17), which prohibits disclosing
"information adversely affecting a debtor's reputation for credit worthiness with knowledge the
information is false," and § 9(a)(33), prohibiting collection of interest or charges of fees in
excess of the actual debt owed unless expressly authorized by law. 225 ILCS 425/9(a).

Supreme Court decision on the issue, we must "use our own best judgment to estimate how the [Illinois] Supreme Court would rule as to its law." *Valerio v. Home Ins. Co.,* 80 F.3d 226, 228 (7th Cir. 1996).

Plaintiff argues *Sherman v. Field Clinic*, 74 Ill. App. 3d 21, 29, 392 N.E.2d 154, 161 (1st Dist. 1979), supports her position. (Pl.'s Resp. at 11.) We disagree. While we must give weight to a state appellate decision when the state Supreme Court has not spoken on an issue of state substantive law, we may decline to follow an appellate decision when "there are persuasive indications that the highest court of the state would decide the case differently." *Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1088 (7th Cir. 2016) (citing *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002)). There are "numerous persuasive indications that the Illinois Supreme Court would depart from *Sherman* and find no implied private right of action under § 9." *Eul v. Transworld Sys.*, No. 15 C 7755, 2017 WL 1178537, at *17 (N.D. Ill. Mar. 30, 2017). As set forth below, we find the conclusion in *Eul*, which takes into account the state of contemporary Illinois law, carefully reasoned and persuasive, and find no implied private right of action under § 9 of the ICAA.

### A. *Sherman* Stands Alone

First, *Sherman* was decided almost forty years ago, and no Illinois appellate decision since 1979 has found an implied private right of action under § 9 of the ICAA. *Id.* at *17. Furthermore, Illinois circuit courts have repeatedly declined to follow *Sherman*, dismissing private actions seeking to recover for alleged violations § 9 of the ICAA. *Eul*, 2017 WL 1178537, at *17 n.14 (listing cases). Accordingly, *Sherman* is an anomaly in Illinois circuit and appellate court law.

10

**B.** *People ex rel Daley v. Datacom System Corp.*

Second, the Illinois Supreme Court itself has suggested that § 9 of the ICAA does not include a private right of action. In *People ex rel Daley v. Datacom System Corp.*, the Cook County State's Attorney brought a complaint on behalf of the people of the State of Illinois alleging unlawful practices in the collection of past-due, unpaid parking tickets. 146 Ill. 2d 1, 9–10, 585 N.E.2d 51, 54–55 (1991). While discussing the state's standing to prosecute suits under the ICAA on behalf of private parties, the court stated "*only* the [DFPR] had standing to pursue civil violations of the Collection Agency Act." *Id.*, 146 Ill. 2d at 26, 585 N.E.2d at 62 (emphasis added). While this language ultimately is dicta because the state sought relief under a different statute, this statement provides "persuasive indication that the Illinois Supreme Court would find no implied right of action in § 9 of the ICAA." *Eul*, 2017 WL 1178537, at *18, n.15.

**C.** *Expressio Unius* **Construction of § 9**

Third, the ICAA expressly indicates the DFPR and Illinois Attorney General can take action for violations of conduct described in § 9, suggesting the Illinois legislature intended to exclude an implied private right of action. "In construing the meaning of a statute, the primary objective of this court is to ascertain and give effect to the intention of the legislature . . . . The plain language of the statute is the best indicator of the legislature's intent." *Metzger v. DaRosa*, 209 Ill. 2d 30, 34–35, 805 N.E.2d 1165, 1167 (Ill. 2004). *Expressio unius est exclusion alterius* ("the expression of one thing is the exclusion of another") guides statutory interpretation in Illinois. *Martis v. Pekin Mem'l Hosp. Inc.*, 395 Ill. App. 3d 943, 949–50, 917 N.E.2d 598, 604 (3d Dist. 2009) (interpreting *expressio unius* to mean, "[w]hen certain things are enumerated in a statute, that enumeration implies the exclusion of all other things even if there are no negative

11

words of prohibition").  When considering a possible implied private right of action, the Illinois

Supreme Court has clarified "when a statute grants a state official broad authority to enforce the

statute, we believe it indicates the legislature's intent not to imply a private right of action for

others to enforce the statute."  *Metzger*, 209 Ill. 2d at 43, 805 N.E.2d at 1172; *see also*

*Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 19, 100 S. Ct. 242, 247 (1979) ( "[I]t

is an elemental canon of statutory construction that where a statute expressly provides a

particular remedy or remedies, a court must be chary of reading others into it.").

Section 9(a) expressly provides the DFPR with power to take "disciplinary or

non-disciplinary action" against those who engage in the enumerated behaviors.

225 ILCS 425/9(a).  More recently, in 2008, the Illinois legislature modified the ICAA to

provide the Illinois Attorney General the ability to enforce "knowing violation[s]" of certain § 9

subsections.  225 ILCS 425/9.7 (enacted by 2007 Ill. Legis. Serv. P.A. 95-437 (S.B. 1398)

(WEST)).  The express grant of power to two state authorities to enforce § 9 indicates the Illinois

legislature did not intend to imply a private right of action under the statute.  *Eul*,

2017 WL 1178537, at *17.

### D.  Provision of a Private Right of Action in § 14a of the ICAA

Fourth, the express provision of a private right of action in other sections in the ICAA

further demonstrates that the Illinois legislature did not intend to imply a private right of action

in § 9.  When the "legislature has expressly provided a private right of action in a specific section

of the statute, we believe the legislature did not intend to imply private rights of action to enforce

other sections of the same statute."  *Metzger*, 209 Ill. 2d at 44, 805 N.E.2d at 1172.  In 1989, the

Illinois legislature modified the ICAA to allow enumerated public officials "or any person" to

maintain an action for injunctive relief under § 14a.  225 ILCS 425/14a (enacted by

12

1989 Ill. Legis. Serv. P.A. 86-615 (H.B. 2004) (WEST)). The provision of an express private right of action to enforce one section of the ICAA but not in § 9 indicates the Illinois legislature did not intend to allow a private right of action to enforce § 9. Further, the legislature's revision of § 14a to provide a private enforcement mechanism stands in contrast to § 9, which the legislature chose not to modify to provide a private right of action.

### E. Adoption of the Administrative Review Law

Finally, the ICAA's adoption of the Illinois Administrative Review Law ("ARL") for review of the DFPR's administrative decisions suggests the Illinois Supreme Court would not find an implied right of private action under § 9. 735 ILCS 5/3-101 *et seq.*; *Eul*, 2017 WL 1178537, at *17. The Illinois Supreme Court has clarified that when a statute granting power to an administrative agency expressly adopts the framework of the ARL, "a circuit court may not entertain an independent action." *Metzger*, 209 Ill. 2d at 42, 805 N.E.2d at 1171; *see also Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147, 105 S. Ct. 3085, 3093 (1985). ("The presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement.") (internal citation omitted). The ICAA provides the DFPR the ability to pursue actions under various provisions of the statute, including § 9(a). In turn, the DFPR's actions under the ICAA are reviewed under the ARL and its rules. 225 ILCS 425/26. The Illinois legislature's express adoption of the ARL's framework to review DFPR actions is further evidence the Illinois Supreme Court would not find a private cause of action under ICAA § 9.

*       *       *

For the foregoing reasons, we agree with Defendant that the Illinois Supreme Court would not find an implied right of action under § 9 of the ICAA. Because Plaintiff's claim

alleges Defendant violated provisions of § 9, her action cannot be sustained as a matter of law. Accordingly, we deny Plaintiff's motion for summary judgment and grant Defendant's motion for summary judgment on Count II.

## CONCLUSION

For the aforementioned reasons, we grant Plaintiff's motion for judicial notice, deny Plaintiff's motion for summary judgment, and grant Defendant's motion for summary judgment. Accordingly, judgment is hereby entered on behalf of Defendant. It is so ordered.

_____
Honorable Marvin E. Aspen
United States District Judge

Dated: January 8, 2018
        Chicago, Illinois